UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KASSANDRA P., <br><br> Plaintiff, <br><br> v. <br><br> ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 3:23-cv-05443-TLF <br><br> ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). The parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 2. Plaintiff challenges the ALJ's decision finding that plaintiff was not disabled. Dkt. 4, Complaint.

On June 28, 2017, plaintiff applied for SSI and DIB alleging a disability onset date of May 15, 2016. AR 324-25, 326-29. Plaintiff's claims were denied initially and upon reconsideration. AR 148-49, 194-95. On April 11, 2019 (Dkt. 41-100) and August 30, 2019 (102-147) a hearing was conducted by Administrative Law Judge ("ALJ") Lawrence Lee; on September 18, 2019 ALJ Lee issued an unfavorable decision. AR 19-33. The request for review was denied and plaintiff filed an appeal. On September 1, 2021, the Honorable David W. Christel remanded for further proceedings. AR 1132.

On July 18, 2022 a hearing on remand was conducted by ALJ Lee. AR 1053-1081. On August 2, 2022 the ALJ issued an unfavorable decision. AR 1026-1042. The request for review by the Appeals Council was denied and plaintiff filed this appeal.

ALJ Lee determined that plaintiff had the following impairments: morbid obesity, PTSD, depression and anxiety/bipolar disorder. AR 1029. As a result, he determined that plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with additional limitations. AR 1031. Accordingly, the ALJ determined that plaintiff could perform the following jobs: Office Helper (DOT: 239.587-010), Mailroom Clerk (DOT: 209.687-026), and Storage Rental Clerk (DOT: 295.367-026). AR 1042.

## STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

DISCUSSION

**1. Medical evidence.**

Plaintiff challenges the ALJ's evaluation of the following medical providers: Dr. Holly Petaja, Ph.D., Dr. Enid Griffin, Psy.D., and Dr. Melanie Edwards Mitchell, Psy.D. Dkt. 10 at 5-10. Plaintiff also challenges the ALJ's evaluation of state agency consultants Patricia Kraft, Ph.D., Renee Eisenhauer, Ph.D., and Rita Flanagan, Ph.D. *Id*. at 10-14.

Under the 2017 regulations, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity how he or she considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).

The Ninth Circuit considered the 2017 regulations in *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). The Court found that "the requirement that ALJs provide 'specific and legitimate reasons'[1] for rejecting a treating or examining doctor's opinion…is incompatible with the revised regulations" because requiring ALJ's to give a "more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources." *Id.* at 792. Under the new regulations,

> an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20

---

[1] *See Murray v. Heckler,* 722 F.2d 499, 501 (9th Cir. 1983) (describing the standard of "specific and legitimate reasons").

C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2). *Id.*

**a. Dr. Holly Petaja, Ph.D.**

On October 26, 2020 Dr. Petaja completed a "Review of Medical Evidence" form and a "Disability/ Incapacity Determination Evaluate Function Limitations (Mental)" check-box form provided by Washington State Department of Social & Health Services. AR 2172-2173. Dr. Petaja opined that plaintiff had a significant (moderate) limitation in the following work related abilities: (a) understand, remember, and persist in tasks by following very short and simple instructions, (b) understand, remember, and persist in tasks by following detailed instructions, (c) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, (e) perform routine tasks without special supervision, (f) adapt to changes in a routine work setting, (h) be aware of normal hazards and take appropriate precautions, (i) ask simple questions or request assistance, (k) maintain appropriate behavior in a work setting, (l) complete a normal workday and workweek without limitation from psychologically based symptoms, (m) set realistic goals and plan independently. AR 2173. Dr. Petaja opined that plaintiff had no significant limitation in every other area. *Id*. Dr. Petaja assigned an overall severity rating of 4 and diagnosed plaintiff with Bipolar I Disorder. AR 2174.

The ALJ determined Dr. Petaja's opinion was not persuasive – that it was unsupported and inconsistent with the record. AR 1036. Specifically, the ALJ found Dr. Petaja's opinion was inconsistent with plaintiff's treatment record – which was limited to conservative treatment – and plaintiff's activities of daily living. *Id*.

As for the ALJ's first reason, evidence of conservative treatment successfully relieving symptoms can serve as a proper reason for discounting a medical opinion. *See* 20 C.F.R. § 404.1529(c)(3)(iv) (the effectiveness of medication and treatment are relevant to the evaluation of a claimant's alleged symptoms); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir.2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

The ALJ does not explain how plaintiff's mental health impairments were limited to conservative treatment options or how this discounts the moderate limitations opined by Dr. Petaja. In fact, the record reflects that plaintiff was in regular counseling for nearly the entire period at issue. *See* AR 511-556, 768-872, 902-930, 1676-1828, 1884-1910, 1990-2168. The record also reflects that plaintiff was prescribed a variety of different medications in the course of her treatment such as Hydroxyzine, Trazodone (AR 879), Escitalopram, Quetiapine, Lamictal (AR 455, 879, 881), Restoril, Abilify, Cymbalta, Pamelor (AR 2195). The ALJ hardly acknowledges plaintiff's treatment with medication, instead focusing on a single period "where she has stopped taking her medications during a manic episode" and cherry-picks points in the record where plaintiff reports improved functioning while complying with treatment recommendations. AR 1035 (citing 535, 876, 877, 882, 883, 884, 885, 891, 938, 941). The ALJ acknowledges that plaintiff was hospitalized in June 2021 but continues to characterize plaintiff's mental health treatment by explaining that "[o]utside of a single admission in June 2021, treatment of the claimant's alleged mental health impairments has remained relatively conservative." AR 1035, 1036.

There is no evidence in the record to indicate that plaintiff's counseling and medication management would be considered conservative treatment, nor did the ALJ indicate what would constitute sufficiently aggressive treatment for PTSD, depression and anxiety/bipolar disorder. *See Baker v. Astrue*, ED CV 09-01078 RZ, 2010 WL 682263 at *1 (C.D. Cal. Feb 24, 2010) ("Much treatment of mental disorders involves medication management . . . Where mental activity is involved, administering medications that can alter behavior shows anything but conservative treatment."). The ALJ also failed to acknowledge periods in the record where plaintiff's symptoms worsened while on medication, or she experienced side effects such as mania, hypomania, bruising, and ineffectiveness from her prescribed course of treatment. *See* AR 879, 881, 884, 895, 2262. Therefore, this was not a proper reason to discount Dr. Petaja's opinion.

As for the second reason, a material inconsistency between a doctor's opinion and a claimant's activities can furnish a proper reason for rejecting the treating physician's opinion. *See, e.g., Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's decision to discredit treating physician where his opinions were "inconsistent with the level of activity that [plaintiff] engaged in"); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (upholding ALJ's rejection of treating physician's opinion where it was contradicted by plaintiff's daily activities).

Here the ALJ cited plaintiff's activities such as "being proficient in most computer programs, typing at 69 words per minute with 99% accuracy . . . highly capable of multitasking, and using various office equipment." AR 1036. The ALJ did not explain how these activities were inconsistent with the limitations opined by Dr. Petaja in a way

6

that allows for meaningful review. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (The Social Security Administration must set forth the reasoning behind its decisions in a way that allows for meaningful review, and the ALJ must build an accurate and logical bridge from the evidence to his or her conclusions). Therefore, this was not a proper basis to reject Dr. Petaja's opinion.

**b.  Dr. Enid Griffin, Psy.D., and Melanie Edwards Mitchell, Psy.D.**

On December 16, 2019 Dr. Griffin completed a psychological/psychiatric evaluation; she diagnosed plaintiff with: borderline personality disorder with avoidant traits, unspecified depressive disorder, and unspecified anxiety disorder. AR 2178. She opined that plaintiff had a moderate limitation in the following basic work activities: (c) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, (d) learn new tasks, (f) adapt to changes in a routine work setting, (j) communicate and perform effectively in a work setting, (k) maintain appropriate behavior in a work setting, (l) complete a normal workday and workweek without limitation from psychologically based symptoms, (m) set realistic goals and plan independently. AR 2179-80. She opined that plaintiff had "none or mild" limitation in every other basic work activity and assigned an overall severity rating of moderate. *Id*. She assessed a duration of six months. AR 2180. She also completed a mental status exam where she noted that plaintiff was cooperative, her speech was within normal range, her mood was slightly depressed, she had a slight depressive perception, she had a slight impairment in her fund of knowledge, had some issues with focusing and sustained attention, and had fair insight and judgment. AR 2181-82.

On December 20, 2019 Dr. Mitchell completed a review of Dr. Griffin's report and concurred with her findings. AR 2175-77.

The ALJ determined these opinions were not persuasive – that they were unsupported and inconsistent with the medical record. AR 1037. Specifically, the ALJ found that the opinions failed to meet the durational requirement, and were inconsistent with plaintiff's activities of daily living. *Id*.

As for the durational requirement, the regulations indicate that the impairment "has lasted or can be expected to last for a continuous period of not less than 12 months" or result in death. 20 C.F.R. § 404.1505(a). Here Dr. Michell indicated that the duration was six months, however, she opined that the onset date was February 6, 2018, nearly two years before she completed the report. AR 2175. Therefore, her opinion reflected that plaintiff's impairments had lasted more than twelve months, and the ALJ erred by discounting her opinion on the basis that it failed to meet the durational requirement.

As for the ALJ's second reason, as stated above, inconsistency with a claimant's activities may serve as a proper basis for rejecting a medical source's opinion. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Yet disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits)).

Here, the ALJ noted plaintiff's activities such as performing her own personal care, preparing simple meals, taking care of her pets, performing household chores,

watching TV, driving, going shopping, reading, doing arts and crafts, handling her finances, using a computer, participating in medieval reenactment, playing Dungeons & Dragons, hanging out with friends, and playing video games. AR 1037. The ALJ stated that the performance of these activities suggests that plaintiff's functional abilities are fairly robust. *Id*.

However, again, the ALJ did not explain how these activities contradict the moderate limitations opined by Dr. Griffin and Dr. Mitchell. Additionally, "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Therefore, this was not a proper reason to discount Dr. Griffin and Dr. Mitchell's opinions.

c.  **State Agency Psychological Consultants**

On February 6, 2018 Patricia Kraft, Ph.D., completed a Mental Residual Functional Capacity Assessment; she opined that plaintiff was moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. AR 157-59.

On April 26, 2018, Renee Eisenhauer, Ph.D., completed a Mental Residual Functional Capacity Assessment; she opined that plaintiff was moderately limited in her ability to carry out detailed instructions, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, respond appropriately to changes in the work setting, set realistic goals or make plans independently of others. AR 188-89.

On March 29, 2021, Rita Flanagan, Ph.D., completed a Mental Residual Functional Capacity Assessment; she opined that plaintiff was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public. AR 1126-28.

The ALJ found these opinions to be generally not persuasive – that the consultants were not privy to more recent medical evidence available at the hearing, and the opinions were generally inconsistent with more recent mental status examinations that showed unremarkable findings. AR 1040.

As for the ALJ's first reason, the only explanation the ALJ provides for why the reliance on an outdated medical record is that "outside of a single admission in June 2021 the record revealed treatment of the claimant's mental health impairments were

limited to conservative treatment options." AR 1040. As explained above, the record does not support the ALJ's conclusion that plaintiff's mental health treatment was conservative. Furthermore, this reason is not persuasive because the ALJ should have considered the reliability of the opinions for the earlier period even if he found that the later development of the record contradicted the opinions. *See Smith v. Kijakazi*, 14 F.4th 1108, 1116 (9th Cir. 2021) (ALJ erred by discounting doctors whose opinions may have been unreliable as to the whole period because they examined plaintiff shortly after he experienced the loss of loved ones but the ALJ should have considered whether the opinions were reliable evidence of functioning for the earlier period).

  As for the ALJ's second reason, the ALJ failed to take into account the waxing and waning nature of plaintiff's mental health symptoms. *See Garrison v. Colvin*, 759 F.3d at 995, 1009 (9th Cir. 2014) (claimants who suffer from mental conditions may have symptoms that wax and wane, with downward cycles, cycles of improvement, and mixed results from treatment). Here the ALJ cited cherry-picked points in the record that "revealed that the claimant's behavior was cooperative; speech was normal; mood was euthymic; affect was normal range; and thought processes were logical." AR 1040 (citing AR 2020, 2026, 2034, 2071, 2081, 2088, 2091, 2102, 2113, 2131). The ALJ did not assess the impact of records where plaintiff was noted to be tearful, hopeless or depressed (AR 1889, 1893, 1896, 2030, 2060), anxious (AR 2037, 2041, 2045, 2049, 2078), or had poor grooming/ hygiene (AR 2037, 2041, 2045, 2049, 2053, 2056, 2060, 2064, 2071, 2081, 2085, 2088, 2091, 2098, 2102, 2105, 2109, 2113, 2131, 2139, 2144). Therefore, this was not a proper reason to discount the state agency psychology consultants' opinions.

### d. Harmless Error

An error that is inconsequential to the non-disability determination is harmless. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient and the error is not harmless. *Id.* at 1052, 1054*; see also, Carmickle v. Comm'r. Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished).

At the hearing the vocational expert ("VE") testified that a person who needed to take an extra 45 minutes of breaks per day or miss three days of work a month would be precluded from all work. AR 1073. The ALJ did not include this limitation in the RFC. Additionally, the ALJ did not include limitations in plaintiff's ability to concentrate. Had the ALJ included the additional limitations opined by Drs. Petaja, Griffin, Mitchell, Kraft, Eisenhauer, and Flanagan, it may have resulted in a more restrictive RFC. Therefore, the error was not harmless.

### 2. Plaintiff's statements regarding subjective symptoms

Plaintiff argues that the ALJ failed to provide a clear and convincing reason to reject plaintiff's testimony because he rejected her complaints and then proceeded to summarize the treatment record, rather than provide reasons for discounting her testimony. Dkt. 10 at 14-16.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In

assessing a Plaintiff's credibility, the ALJ must determine whether Plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

Here the ALJ concluded that the medical record showed a greater level of function than alleged by plaintiff, and stated that the record shows a level of physical and mental functioning in plaintiff's personal life that strongly indicates that plaintiff's symptoms are not as limiting as alleged. AR 1035.

As for the ALJ's first reason, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). However, an ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (quoting *Smartt v. Kijakazi*, 53 F.4th 489 498 (9th Cir. 2022) (internal quotations omitted).

Here the ALJ provides a summary of the medical record, but does not explain how the cited portions of the record contradict any of plaintiff's particular allegations regarding the limitations from her mental impairments. The Ninth Circuit has held that "[u]ltimately, the 'clear and convincing' standard requires an ALJ to show his work." *Smartt*, 53 F.4th at 499. Furthermore, the points that the ALJ highlights are not

necessarily contradictory to her testimony with regard to the larger picture of her mental health, as the court has already explained. *Garrison v. Colvin*, 759 F.3d at 995, 1009 (9th Cir. 2014). Therefore, this was not a clear and convincing reason to discount plaintiff's testimony.

As for the ALJ's second reason, an ALJ may discount a claimant's testimony based on daily activities that either contradict their testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The activities that the ALJ lists are the same activities he listed in discounting the opinions of the state agency consultants. AR 1035. Again, the ALJ does not explain which testimony is contradicted by these activities or how it is contradicted. For that reason, this is not a clear and convincing reason to discount plaintiff's testimony.

An error that is inconsequential to the non-disability determination is harmless. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient and the error is not harmless. *Id.* at 1052, 1054*; see also, Carmickle v. Comm'r. Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished).

Here plaintiff testified in the first hearing that her daily activities are limited by her impairments. AR 1303. She testified that she has had problems with attendance in previous work. *Id*. She testified that she had frequent panic attacks at work while working at Walmart. AR 1305. She estimated that these occurred two to three times per week and lasted between five minutes and an hour. AR 1306. She testified that at night

she has auditory hallucinations of people calling her name. AR 1311. She testified that in a nine-to-five job, her volatile emotional state, inability to focus, and concentration impact her work. AR 1312-1313. She testified that she goes through bouts of severe depression at which point her personal hygiene is put to the wayside. AR 1313. She testified that she cycles through at least one cycle a month from mania – where she is unable to focus – to depression. AR 1313. She testified that in both phases she can have difficulty taking her medication, when she is manic she forgets and when she is depressed she lacks motivation. AR 1314-1315.

The RFC did not include limitations described in plaintiff's testimony regarding her problems with attendance, need for excessive breaks, or her difficulties with focus. Had the ALJ included this testimony the RFC may have been more limited. Therefore, the error was not harmless.

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings including a de novo hearing.

Dated this 2nd day of May, 2024.

Theresa L. Fricke
United States Magistrate Judge